STATE of Minnesota, Respondent,

v.

Norman Dean HAYES, Appellant.

No. C6–88–120.

Court of Appeals of Minnesota.

Sept. 13, 1988.

Review Granted Oct. 26, 1988.

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Asst. Atty. Gen., St. Paul, Stephen Rathke, Crow Wing County Atty., Brainerd, for respondent.

C. Paul Jones, State Public Defender, Marie L. Wolf, Asst. State Public Defender, Minneapolis, for appellant.

* Acting as judge of the Court of Appeals by ap-

Considered and decided by HUSPENI, P.J., NORTON and HACHEY,* JJ., without oral argument.

## OPINION

RONALD E. HACHEY, Judge.

Appellant Norman Dean Hayes challenges his misdemeanor conviction for using artificial lights to locate animals in violation of Minn.Stat. § 97B.081, subd. 1 and Minn.Stat. § 97A.331, subd. 2 (1986).

### FACTS

Around midnight of the opening day of deer bow hunting season, Department of Natural Resources conservation officers stopped appellant and two other men for using artificial lights to locate animals (deershining). See Minn.Stat. § 97B.081 subd. 1.

While waiting in a field alert for deershining, the officers noticed a van which was traveling much slower than other traffic on the road. The officers kept their car lights off and followed the van for several miles. At one point, the sliding side door of the van opened as the van approached a field where a deer was standing. As the van passed the field, a bright light arced out over the field from the passenger's side of the van. The light illuminated the deer, the van stopped and the deer bounded away. When the van reached a wooded area, the van door closed. A mile or so later, the officers saw the van door open and the light shine as the van passed another field. The door closed and the light went off at the end of the field. This occurred one more time before the van was stopped.

To stop the van, some officers turned their red lights on and blocked the roadway. The van stopped quickly. The driver, Kostal, front seat passenger, Hathaway, and appellant, who was sitting on a box behind the driver's seat, exited. Inventory of the van revealed three compound bows, the kind of bows used to hunt big game animals, several target and hunting arrows and a 200 candle power spotlight

pointment pursuant to Minn.Const. art. 6, § 2.

connected directly to the car battery. Two of the bows were encased. The third bow, appellant's, had a case draped over it. This case had a broken zipper and velcro strips had been substituted to close it. None of the bows were in the rearmost part of the van.

At trial, Kostal and Hathaway testified that they did not intend to hunt but were scouting for an area to hunt the next day. Hathaway testified that he was the only person who was using the spotlight. He testified to spotting the deer. Hathaway testified that it would be very difficult to shoot a deer from the inside of the van. He also testified that he was an experienced hunter and had loaned appellant some arrows and a case for his bow. He testified that the bows were encased and put in the rear of the van when the men set out to scout the area. Appellant did not testify.

The jury found appellant guilty and the trial court sentenced him to one year in jail, fines totaling $758 and required him to pay $400 for defense costs. The trial court suspended his hunting privileges in Minnesota for three years and in the United States and Canada for two years. The trial court stayed all but 120 days of the sentence and imposed two years probation.

On appeal, appellant claims the trial court erred in his jury instruction, the evidence was insufficient to support a conviction and the trial court erred in setting probation conditions.

## ISSUES

1. Did the trial court err in instructing the jury that "one of a group of persons" included anyone who passively acquiesced in deershining?

2. Was the evidence sufficient to support the conviction?

3. Did the trial court err in imposing sentence and in ordering a fine as a condition of probation without a hearing on appellant's ability to pay?

## ANALYSIS

### I. Jury Instruction

The elements of using artificial lights to locate animals are:

(a) A person may not cast the rays of a spotlight, headlight, or other artificial light on a highway, or in a field, woodland, or forest to spot, locate, or take a wild animal while having in possession, either individually or as one of a group of persons, a firearm, bow or other implement that could be used to kill big game.

\*      \*      \*      \*      \*      \*

(c) This subdivision does not apply to a bow that is:

(1) completely encased or unstrung; and

(2) in the closed trunk of a motor vehicle.

(d) If the motor vehicle under paragraph (b) or (c) does not have a trunk, the firearm or bow must be placed in the rearmost location of the vehicle.

Minn.Stat. § 97B.081 (1986).

The trial court explained the elements of deershining as:

First, that acting individually or as one of a group of persons, [appellant] did on September 19–10, 1987, in Crow Wing County throw or cast the rays of a spotlight, headlight or other artificial light on a field, woodland or forest for the purpose of spotting or locating a wild animal. The words, for the purpose of spotting or locating a wild animal, require that [appellant] intended to use the light or lights in such a manner as that a wild animal could then and there be spotted or located. If one of the persons of a group of several persons in a car is using the car's headlights, a spotlight or other artificial light for the purpose of spotting or locating a wild animal, and the others acquiesce in it, those who acquiesce are aiders or accomplices and they are violating the law to the same extent as the one using the headlights.

\*      \*      \*      \*      \*      \*

To acquiesce means to accept, agree or assent, even though passively. *However, [appellant] must actually intend to ac-*

*quiesce in order for there to be legal acquiescence.*

(Emphasis added.)

Appellant objects to the trial court's instructing the jury that passive acquiescence is sufficient to find appellant was "one of a group of persons" under the statute prohibiting deershining. Appellant argues that the level of involvement should be the same as required of an accomplice under Minn.Stat. § 609.05 (1986). The degree of participation to support a conviction as "one of a group of persons" is an issue of first impression in Minnesota.

■ We cannot approve that part of the court's instruction which states, "[t]o acquiesce means to accept, agree, or assent even though passively." Standing alone that would amount to reversible error. The court then continued, "[h]owever, [appellant] must actually intend to acquiesce in order for there to be legal acquiescence."

As the Minnesota Supreme Court has stated:

> It is competent for the jury to consider this conduct in connection with other circumstances and thereby reach the conclusion that he assented to the commission of the crime, lent to it his approval, and was thereby aiding and abetting its commission. Certainly mere presence on the part of each would be enough if it is intended to and does aid the primary actors.

*State v. Parker,* 282 Minn. 343, 355, 164 N.W.2d 633, 641 (1969).

Thus, reading the charge as a whole, the trial court's instruction does not rise to the level of reversible error. *See State v. Flores,* 418 N.W.2d 150, 155–56 (Minn. 1988).

### II. Sufficiency of Evidence

Appellant claims the van made an abrupt stop in response to the conservation officers' roadblock which caused the bows to move forward in the van and appellant's bow to pull free from the bow case's velcro ties. The officer testified that they found appellant's bow strung with a case draped over it in the middle of the van.

In review of a claim of insufficiency of the evidence, the appellate court determines whether, under the facts in the record and any legitimate inferences that can be drawn from them, a jury could reasonably conclude that the defendant was guilty of the offense charged. *State v. Race,* 383 N.W.2d 656, 661 (Minn.1986). The evidence must be viewed in the light most favorable to the prosecution and it is assumed that the jury believed the state's witnesses and disbelieved any contradictory evidence. *State v. Andrews,* 388 N.W.2d 723, 728 (Minn.1986); *State v. Wahlberg,* 296 N.W.2d 408, 411 (Minn. 1980).

■ Assuming the jury disregarded appellant's explanation for the uncased bow and viewing the other evidence in the light most favorable to the prosecution, the evidence was sufficient to support the conviction. *See, e.g., State v. Smith,* 313 N.W.2d 429, 430 (Minn.1981); *State v. Rudolph,* 289 N.W.2d 484, 486 (Minn.1979).

■ Appellant argues that the jury may have been improperly influenced by Kostal and Hathaway's testimony admitting they pleaded guilty to deershining. However, since no objection was raised at trial, the issue may not be considered on appeal. *State v. Malaski,* 330 N.W.2d 447, 451 (Minn.1983).

### III. Sentencing

Appellant argues that his sentence was unduly harsh and it was error to require him to pay the cost of his defense. Appellant argues that trial court's sentence was based upon misconceptions about appellant's increased culpability as shooter and mastermind of the whole operation. While the record indicates the operation was not entirely appellant's idea or that he was necessarily the mastermind, there is sufficient evidence to find the trio were not on an exploratory scouting mission to line up potential deer areas for the next day. The record indicates that on at least two occasions, the searchlight was focused on field areas where deer might be night feeding. The van door was opened, and an uncased

bow was lying nearby. As the trial court stated:

I heard this evidence and in the 14 years that I have sat as a Judge, I have not seen a more deliberate, a more efficient, a more professional deer shining operation than this. The light was literally connected to the battery, they weren't taking any chances on the cigarette lighter. The defendant is seated in the back of the van, he is opening the door upon suggestion of his companion who spots a deer. The pictures show that the door had been opened, the pictures show that the bow was not encased.

\* \* \* \* \* \*

I have absolutely no sympathy for you or any of the kind of people that do this dastardly, cowardly, skunky type of operation.

 In its sentencing remarks, the trial court emphasized that the jury did not accept the testimony of Hathaway and Kostal. Even if the trial court improperly classified appellant's role, appellant's guilt is not in any manner lessened in view of the record. The court also noted appellant was a "six time" felon. We find the trial court's remarks justified and not impermissible.

 A hearing is required to determine whether a defendant has the ability to pay for his defense and to determine the amount of those costs. Failure to have a hearing is error. *See, e.g., Foster v. State,* 416 N.W.2d 835, 837 (Minn.Ct.App.1987); *State v. Larson,* 374 N.W.2d 329, 331–332 (Minn.Ct.App.1985).

Respondent claims that appellant is precluded from raising this issue on appeal because there was no motion at the trial level. The imposition of defense costs was appealed as part of the sentence and may be considered on appeal. *See* Minn.R.Civ. App.P. 103.04. Because the trial court did not provide a hearing, the order requiring appellant to pay his defense costs is reversed and the issue is remanded to the trial court for a hearing concerning the amount of the costs and appellant's ability to pay.

## DECISION

Considering the instruction as a whole, the court did not err in instructing the jury. The evidence was sufficient to support the jury's verdict. The sentence imposed is affirmed except that part requiring appellant to pay defense costs of $400 is reversed and the matter is remanded to the trial court for a hearing to determine whether or not appellant has the ability to pay his defense costs and to further determine the amount thereof.

Affirmed in part, reversed in part and remanded.